UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY ROKITKA,

                          Plaintiff,

   v.                                            **DECISION AND ORDER**
                                                                   11-CV-614S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

      1.      Plaintiff Anthony Rokitka challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled due to back, shoulder, and wrist injuries, and colon problems since January 22, 2007. Plaintiff contends that his impairments render him unable to work. He therefore asserts that he is entitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Act.

      2.      Plaintiff filed an application for DIB under Title II of the Act on June 10, 2009, alleging disability since January 22, 2007. On the same day, Plaintiff also filed an application for SSI under Title XVI. The Commissioner of Social Security ("Commissioner") denied Plaintiff's initial application, and Plaintiff requested a hearing. An administrative hearing was then held on February 1, 2011 by video conference before ALJ Jeffrey M. Jordan at which Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on February 15, 2011, issued a decision denying Plaintiff's application for benefits. Plaintiff filed a request for review with the Appeals Council, which, on June 24, 2011, denied Plaintiff's request for review. Plaintiff filed the current civil action on July 19,

2011, challenging Defendant's final decision.[1]

3. On February 16, 2012, the Commissioner filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing on the motion concluded May 7, 2012, at which time this Court took it under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support

---

[1] The ALJ's February 15, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.   The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.   This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since January 22, 2007 (R. at 14);[2] (2) Plaintiff's disorders of the back, shoulders, and wrist, and chronic pain syndrome versus gout constituted "severe" impairment within the meaning of the Act (R. at 14); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 15); (4) Plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) (R. at 15);[3] and (5) considering Plaintiff's age, education, work

---

[2] Citations to the underlying administrative record are designated as "R."

[3] Plaintiff could lift and carry less than 10 pounds occasionally and push or pull less than five pounds occasionally. He had to avoid above-shoulder lifting, carrying, pushing, pulling, and reaching. Plaintiff could stand and walk for two hours with the aid of a cane, and sit for six hours, within an eight-hour workday. He should stand for no more than 15 minutes before sitting, and sit for no more than 20 to 25 minutes before standing. The ALJ also determined that Plaintiff should avoid constant reaching and constant fine and gross manipulation with his right upper extremity. Lastly, Plaintiff was limited to simple, routine low-stress tasks and was to avoid extreme temperatures and humidity.

experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform (R. at 23). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from January 22, 2007, through February 15, 2011, the date of the ALJ's decision. (R. at 25.)

10. Plaintiff advances two primary challenges to the ALJ's decision. Nestled within those arguments are a series of additional challenges, typically presented in the form of a single sentence. The first challenge comprises Plaintiff's assertion that the ALJ "succumb[ed] to the temptation to play doctor." (Pl.'s Mem. 2, Docket No. 13.) As part of that challenge, Plaintiff also variously alleges that the ALJ provided the Vocational Expert ("VE") with an incomplete hypothetical, disregarded Plaintiff's subjective testimony, and committed an arithmetical error calculating how long Plaintiff could remain standing. The second challenge principally argues that the ALJ did not conduct a proper credibility determination of Plaintiff's testimony.

11. This Court first considers those arguments that, while included under Plaintiff's primary challenges, actually raise other grounds on which remand might be appropriate. For example, Plaintiff asserts that the ALJ failed to impose any limitations on him as a result of injuries to his left arm and shoulder. But a review of the ALJ's lengthy RFC assessment shows that a majority of the limitations did not distinguish between extremities, and so applied equally to both. Thus, Plaintiff needed to avoid above-shoulder lifting, carrying, pushing, pulling, and reaching with either arm.

Plaintiff points to a workers' compensation award, finding 45% permanent loss of use of his left arm. (R. at 301.) But workers' compensation boards apply different standards than those governing disability determinations under the Act, and are

accordingly not binding on an ALJ. See Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) (citing Coria v. Heckler, 750, F.2d 245, 247 (3d Cir. 1984)); see also Gray v. Chater, 903 F. Supp. 293, 301 n. 8 (N.D.N.Y. 1995). Further, even substantively considered the opinion adds little of value to the discussion. The opinion makes no mention of the ability to engage in "constant reaching and constant fine and gross manipulation" (the additional limitations imposed by the ALJ on Plaintiff's right upper extremity) (R. at 15). Nor does a 45% loss of use finding make clear how the ALJ's identified limitations are erroneous. The workers' compensation award does not specify what additional limitations should be imposed, or whether those limitations would comport with those found by the ALJ.[4] Given that, as already observed, "disability for purposes of workers' compensation benefits is determined under a different standard than the standard used in the Social Security context," this is unsurprising. Lefever v. Astrue, No. 5:07-CV-622 (NAM/DEP), 2010 WL 3909487, at *13 (N.D.N.Y. Sept. 30, 2010).

12.     Plaintiff's other contentions fare no better. Plaintiff argues that the ALJ's finding that he could sit for six hours and walk with a cane for two hours is incompatible with the added limitation that he could sit for, at most, 20 to 25 minutes, before having to stand up for no more than 15 minutes. According to Plaintiff, in a 40 minute period, this would require him to stand for 37.5% of the time, presumably because he would sit for 25 minutes, and then stand for 15. It is unclear why Plaintiff divides his eight-hour workday into 40 minutes increments. Regardless, Plaintiff's contention is premised on bad math. There is no reason to think Plaintiff would have to sit for 25 minutes. Indeed, he could sit for any number of minutes, up to 25, before standing. Once standing, he again would not

---

[4] Although Plaintiff does not cite it, this Court notes that Dr. Michael Miller did diagnose a 40% loss of use of Plaintiff's left arm with greater specificity. 20% of the loss was ascribed to a range of motion deficit, 15% for loss of rotation, and 5% for a partial rotator cuff tear. (R. at 18.) It is clear that the ALJ did consider this diagnosis, although it too was made within the context of a workers' compensation claim.

6

need to remain up for 15 minutes, but could sit back down at any point thereafter. To give but one example, included in the Commissioner's memorandum, were Plaintiff to divide his eight-hour workday into periods in which he sat for 25 minutes, stood for 5, sat for another 20, and then stood back up for 10. This would result in him sitting for six hours and standing for another two, corresponding exactly with the ALJ's RFC assessment.[5]

13. Having dispensed with these minor points, this Court can now consider Plaintiff's two substantive arguments. As to the first, Plaintiff argues that "there is no evidence whatsoever to support anything but substantial and continuing difficulty with both shoulders, his arms and his right hand" and that no medical evidence supports the ALJ's determination. (Pl.'s Mem. 3.) Stripped of its hyperbole, Plaintiff essentially maintains that the ALJ's RFC assessment is not supported by substantial evidence. This Court disagrees.

14. As a preliminary matter, the ALJ based his limitations on the decisions of multiple physicians. The ALJ relied on the decision of Dr. Cyndria Bender, a state-agency consulting physician. Dr. Bender identified a series of moderate limitations. These included moderate limitations in lifting, pushing, pulling, reaching, carrying heavy objects, walking, standing, sitting, and climbing. (R. at 270.) Contrary to the ALJ's more restrictive RFC, Dr. Bender thought Plaintiff only had a very mild limitation in handling objects as a result of pain in his right wrist. (R. at 270.) The ALJ was entitled to rely on the opinions of Dr. Bender who, as a state agency medical consultant, was a qualified expert in the field of Social Security disability. See 20 C.F.R. § 404.1527(e)(2)(i).

The ALJ also relied on the opinion of Dr. Michael Grant, Plaintiff's treating physician,

---

[5] Obviously this is not the only combination possible. Provided Plaintiff stood for a total of 15 minutes every hour, and sat for 45 minutes, he could divide his time however he pleased and still fall within the ALJ's limitations.

who found that Plaintiff suffered from limitations to his left upper extremity. The ALJ's RFC assessment provided that Plaintiff was to avoid various above-shoulder motions. The blanket claim that the ALJ's opinion was without medical support is thus inaccurate and need not be considered further.

15.   Plaintiff's other challenge is that the ALJ improperly dismissed Plaintiff's description of the intensity, persistence, and limiting effects of his symptoms. Plaintiff specifically attacks the ALJ's failure to consider all the factors listed in SSR 96-7p.

16.   Credibility determinations are generally reserved for the Commissioner, not the reviewing court. Aponte v. Sec'y of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). In making a credibility determination, the ALJ will consider, in addition to a claimant's subjective medical history, several other factors, such as (i) plaintiff's daily activities; (ii) location, duration, frequency, and intensity of pain and symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness and side effects of any medications taken to alleviate the pain and symptoms; (v) treatment other than medication; (vi) any measures used to relieve the pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain and symptoms. 20 C.F.R. § 404.1529(c)(3). "Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are 'sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'" Wischoff v. Astrue, No. 08-CV-6367, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010) (quoting Delk v. Astrue, No. 07-CV-167-JTC, 2009 WL 656319, at *4 (W.D.N.Y. Mar. 11, 2009)).

17.   Here, the ALJ engaged in an exhaustive review of the medical record, as well as Plaintiff's subjective complaints, and found Plaintiff's statements not credible. The ALJ

identified the fact that Plaintiff described his pain as so severe as to nearly require the assistance of an ambulance, despite pain medication. But Plaintiff was not on any pain medications for much of his disability period, as evidenced by the fact that he lacked the necessary insurance. (R. at 18.)[6] The ALJ also noted an inconsistency between the alleged side effects from his medication, and the lack of such complaints to his physicians. (R. at 18.) At the hearing, Plaintiff also stated that he spent four to five hours a day lying down, left his house only a couple of time a week, sporadically saw others, did only some dishes, did not cook, and had not gone out regularly in six or seven years. (R. at 43-46.) But previously Plaintiff had complained that meal preparation and shopping took him a long time, not that he was unable to do them. (R. at 188.) He also stated that he went out daily for cigarettes and for coffee with friends. (R. at 189, 191.) This is thus not a case in which the ALJ made a "single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. 1996). Instead, the ALJ identified a series of inconsistencies on which he was entitled to rely and find Plaintiff's statements not credible. See 20 C.F.R. § 404.1529(c)(4).

18. The ALJ also considered other factors. He observed that Plaintiff's daily activities included running errands, paying bills, doing chores, watching television, reading, using the computer, going out every day, having coffee in the morning with friends, and briefly working as a bartender and delivery driver. (R. at 21.) Plaintiff also received unemployment benefits after the alleged onset of disability and certified that he was then

---

[6] There appears to be some confusion relating to the ALJ's observation that Plaintiff was not taking any pain medications for much of the alleged disability period. Plaintiff argues that the fact that he was not taking any pain medications should not be held against him because he could not afford insurance. (R. at 293.) But this Court understands the ALJ's reasoning differently. His testimony was not in doubt because he failed to take medication despite his high levels of pain. Rather, it was that he alleged his pain was so intense even with medication when, in fact, he had no prescription drugs.

"ready, willing, and able to work." (R. at 47.) When asked whether, during this time, he could have worked in a full-time job, Plaintiff responded, "At that time – yes." (R. at 47.) Finally, during various periods following the alleged onset of disability Plaintiff's own physician stated that Plaintiff could return to work. (R. at 250.) These contributed to the ALJ's final determination that Plaintiff's description of his limitations was not credible.

19. Plaintiff's response is insufficient to alter this conclusion. Contrary to Plaintiff's assertion, the ALJ was not required to evaluate each of the factors under 20 C.F.R. § 404.1529(c)(3). See Wischoff v. Astrue, 2010 WL 1543849, at *7. As to the pain medications and side effects, Plaintiff writes that he is "not even sure how that relates to the Claimant's case." (Pl.'s Mem. 5.) But it is clear that the ALJ found Plaintiff's testimony as to these inconsistent, and on that basis found his statements less credible. Plaintiff also cites to a series of cases from outside this circuit to argue that he need not show that he is incapable of every life activity. He particularly relies on Carey v. Apfel, 6 F. Supp. 2d 195, 202 (W.D.N.Y. 1998), the facts of which he believes are analogous to those here.

This Court agrees that, were the ALJ's decision not based on more than the Plaintiff's self-described daily activities, remand might be appropriate. But the determination here was also supported by medical evidence and inconsistencies in the Plaintiff's own statements. This distinguishes this case from Carey where "no medical opinion in this record supports the conclusion that plaintiff could still perform sedentary work." Id. at 202.

20. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical

evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings.

* * *

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   June 23, 2012
          Buffalo, New York

                                           /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                              Chief Judge
                                       United States District Court